IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**SHAWN LOVETT and**
**CHERYL LOVETT,**

    **Plaintiffs,**

v.                                                              3:13-CV-03593-O-BK

**HSBC MORTGAGE SERVICES,**
**INC.,**

    **Defendant.**

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Judge's *Order of Referral*, this case has been referred to the undersigned for pretrial management. (Doc. 13). The cause is now before the Court on Defendant's *Motion to Dismiss* (Doc. 7), Plaintiffs' *Motion to Remand* (Doc. 12), and Plaintiff's *Alternative Motion for Leave to File an Amended Complaint* (Doc. 14). For the reasons that follow, it is recommended that Defendant's *Motion to Dismiss* be **GRANTED**, Plaintiffs' *Motion to Remand* be **DENIED**, and Plaintiff's *Alternative Motion for Leave to File an Amended Complaint* be **GRANTED**.

### I. PROCEDURAL BACKGROUND

In August 2013, Plaintiffs brought this action in state court against Defendant in connection with the anticipated foreclosure of their home. They allege that they sought a loan modification from Defendant because they were behind on their mortgage payments. (Doc. 1-1 at 5). Rather than process their modification request, however, Plaintiffs contend that Defendant charged them an excessive "standard payment" that they could not afford and which was not explained to them and then sent them notices of acceleration and foreclosure. *Id.* at 6. Plaintiffs

have sued Defendant (1) raising a claim of negligent undertaking of the review of Plaintiffs' loan modification application and (2) seeking an accounting of all outstanding charges. *Id.* at 7-9. Plaintiffs also requested and received from the state court a temporary restraining order ("TRO") preventing Defendant from foreclosing on the property during the pendency of this action.[1] *Id.* at 2, 9-10.

Defendant removed the case to this Court based on diversity jurisdiction, alleging that (1) the amount in controversy requirement is satisfied; (2) Plaintiffs are citizens and residents of Texas; and (3) Defendant is a citizen of Delaware. (Doc. 1 at 2-3). Defendant now has moved to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 7). Plaintiffs have moved to remand their case to state court for lack of federal subject matter jurisdiction. (Doc. 12). They also oppose Defendant's dismissal motion and, alternatively, request leave to amend their complaint. (Doc. 14). Before addressing Defendant's dismissal motion, the Court will first consider its subject matter jurisdiction. *See, e.g.*, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) ("Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter.").

## II.  SUBJECT MATTER JURISDICTION

**A.     Jurisdictional Arguments**

Plaintiffs contend that diversity jurisdiction does not exist because the amount in controversy requirement is not satisfied. (Doc. 12 at 2). They assert that the requisite amount

---

[1] Although Plaintiffs included in their petition a request for a permanent injunction prohibiting Defendant from foreclosing on the property (Doc. 1-1 at 10), they represent in support of their *Motion to Remand* that the inclusion of that language was inadvertent, and they do not seek such relief. (Doc. 18 at 2).

2

cannot be based on the value of their home because they do not seek to set aside the deed of trust, extinguish Defendant's security interest in the property, clear any cloud on title, or permanently enjoin Defendant from foreclosing on the property. *Id.* at 3-4. They argue that the length of the requested injunction is crucial to determine the value of the remedy, and only if permanent relief is sought does the entire value of the property count towards the amount in controversy requirement. *Id.* at 4. Because Plaintiffs only request a TRO and preliminary injunction preventing a foreclosure sale during the pendency of the lawsuit, they assert that the amount in controversy should be calculated based on either the regular mortgage payments during that time frame or the amount of interest due on any arrearage. *Id.* at 4-5.

Defendant responds that Plaintiffs' negligent undertaking claim relating to the requested loan modification represents a challenge to Defendant's enforcement of the loan note and deed of trust which necessarily affects its secured interest in the entire property. (Doc. 17 at 2). Defendant argues that Plaintiffs' attempt to enforce an alleged promise relating to that undertaking concerns the whole property, the value of which exceeds the amount in controversy requirement. *Id.* at 2-3.

**B.     Applicable Law and Analysis**

Under 28 U.S.C. § 1446, a defendant may remove a civil action from state court to federal court if the action originally could have been brought in federal court. 28 U.S.C. §§ 1441(a), (b). A federal district court has original jurisdiction of an action between citizens of different states when the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a)(1). Thus, a state case involving opposing parties from different states is removable. 28 U.S.C. § 1441. The removing party bears the burden of establishing the facts necessary to show that

3

federal jurisdiction exists. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). A plaintiff may move to remand an action on the basis of any defect in the removal procedure, other than subject matter jurisdiction, within 30 days of removal. 28 U.S.C. § 1447(c). "[B]ecause the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns, which mandate strict construction of the removal statute." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365-66 (5th Cir. 1995). Any doubts about whether removal jurisdiction is proper must therefore be resolved against the exercise of federal jurisdiction. *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

The amount in controversy threshold is a necessary element that must be met before a federal court can properly exercise diversity jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). When addressing a motion to remand, the court determines the amount in controversy from the plaintiff's perspective. *Garcia v. Koch Oil Co. of Texas, Inc.*, 351 F.3d 636, 639-40, 640 n.4 (5th Cir. 2003). Courts "ordinarily consult the state court petition to determine the amount in controversy." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). When, as in this case, "the petition does not include a specific monetary demand, [the defendants] must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000." *Id.* "This requirement is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Id.*

In actions where the plaintiff seeks injunctive relief, "the amount in controversy is

4

measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).  The "object of the litigation" is "the value of the right to be protected or the extent of the injury to be prevented." *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).  In the context of an insurance policy dispute, the Court of Appeals for the Fifth Circuit has held that when a "right to property is called into question in its entirety, the value of the property controls the amount in controversy." *Waller v. Prof. Ins. Corp.*, 296 F.2d 545, 547–48 (5th Cir. 1961).  Several district courts, including this one, have extended the *Waller* holding to the property foreclosure context, finding that where a plaintiff puts the title to real property in dispute, the value of the whole property is the proper measure of the amount in controversy.  *See e.g.*, *McDonald v. Deutsche Bank Nat. Trust Co.*, No. 3:11-CV-2691-B, 2011 WL 6396628, *2 (N.D. Tex. 2011) (Boyle, J.).

  Plaintiffs, nevertheless, argue that their situation is distinguishable from cases like *McDonald* because they seek only temporary injunctive relief, not a permanent injunction.  Much of the case law in this circuit does involve homeowners requesting permanent injunctions.  There are, however, many cases where the homeowner sought only a TRO, and the court found that the injunctive relief sought brought the entire value of the property into dispute, thus satisfying the amount in controversy requirement.  *See Zavala v. M & T Trust Co.*, No. SA-11-CV-956-XR, 2011 WL 6739614, *1-2 (W.D. Tex. 2011) (noting that while the plaintiff did not specify any governing cause of action, but sought a TRO preventing the defendant from taking any action adverse to the property, such as foreclosure, and the county tax appraisal valued the property at $108,130, the amount in controversy requirement was satisfied); *Buttelman v. Wells Fargo Bank, N.A.*, No. 5:11-CV-00654-XR, 2011 WL 5155919, *4 (W.D. Tex. 2011) (holding that the value

5

of the whole property was the amount in controversy where the plaintiff sought a TRO and preliminary injunction to prevent the defendant from foreclosing because, without "judicial relief, Plaintiff could be divested of all right, title, and interest to the property."); *Hanna v. RFC Deutsche Bank Nat. Trust Co.*, No. 3:11-CV-00346-L, 2011 WL 2981855, *3 (N.D. Tex. 2011) (Lindsay, J.) (holding that the amount in controversy requirement was satisfied where the plaintiffs, who moved for a TRO to set aside the foreclosure sale, sought a ruling as to who was the rightful titleholder of the property, and the property was valued at more than $75,000); *Grant-Brooks v. Nations Credit Home Equity Servs. Corp.*, No. 3-01-CV-2327-R, 2002 WL 31298861, *1 & n.1 (N.D. Tex. 2002) (Buchmeyer, J.) (noting that diversity jurisdiction was proper where the plaintiff did not specify any governing causes of action, but sought a TRO preventing the defendant from foreclosing on her home). In fact, the undersigned has addressed this situation twice before and found that removal was proper both times. *See Whiting-Bey v. Dehner*, No. 3:13-CV-2827-M-BK, 2013 WL 6501272, *1-2 & n.1 (N.D. Tex. 2013) (Lynn, J.) (adopting findings of Toliver, M.J.) (noting that the amount in controversy requirement was satisfied where the plaintiff raised claims of wrongful foreclosure and fraud and sought a TRO to prevent his forcible eviction from the home, the value of which exceeded $75,000); *Stewart v. Bank of Am., N.A.*, No. 3:12-CV-2630-M-BK, 2012 WL 5903801, at *1-2 (N.D. Tex. 2012) (Lynn, J.) (adopting findings of Toliver, M.J.) ( holding that the amount in controversy requirement was satisfied where the plaintiff raised Texas statutory claims and sought a TRO to prevent the foreclosure sale of his home, the value of which exceeded $75,000).

Based on the above case law, it is the value of the property as a whole that governs the amount in controversy determination, rather than the cost of Plaintiffs' mortgage payments

6

during the suit's pendency or the amount of interest due on any arrearage. *Hanna*, 2011 WL 2981855 at *3.

Having established the proper reference point for determining the amount in controversy, the Court next considers whether Defendant has established by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000. *Manguno*, 276 F.3d at 723. Defendant included with its *Notice of Removal* an appraisal of the subject property by the Dallas Central Appraisal District, valuing the property at more than $150,000. (Doc. 1-2 at 1). Plaintiffs have not provided any evidence to the contrary or objected to Defendant's evidence of the home's value. Because there is competent evidence that the property's value exceeds the $75,000 amount in controversy requirement, and there is no dispute that the parties are of different citizenship, Plaintiffs' *Motion to Remand* (Doc. 12) should be **DENIED**. *See Hearn v. Deutsche Bank Nat. Trust Co.*, No. 3:13-CV-2417-B, 2013 WL 6079460, *4 (N.D. Tex. 2013) (Boyle, J.) (holding that an appraisal from the Dallas Central Appraisal District was competent evidence that the court could rely upon in determining the amount in controversy). The Court next addresses Defendant's *Motion to Dismiss*.

### III.  MOTION TO DISMISS

**A.**     **Rule 12(b)(6) Standard**

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced

at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). The complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity because the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted).

**B.     Parties' Arguments**

Defendant contends that Plaintiffs' claim for negligent undertaking should be dismissed because (1) Defendant owed no duty to Plaintiffs independent of the note and deed of trust; (2) the economic loss doctrine precludes recovery in tort; and (3) Texas law does not recognize a cause of action for negligent undertaking without physical injury. (Doc. 7 at 1-4). Additionally, Defendant asserts that Plaintiffs' request for an accounting should be dismissed because it fails to adequately describe any accounting error and an accounting is a remedy, not a separate claim for relief. *Id.* at 2, 5. In the alternative, Defendant asks that Plaintiffs be ordered to amend their complaint or provide a more definite statement pursuant to Rule 8 of the Federal Rules of Civil Procedure. *Id.*

Plaintiffs respond that physical harm is not a requisite to stating a negligent undertaking claim. (Doc. 14 at 7-11). They further contend that their claims are not barred by the economic loss doctrine because there exists no contractual duty between the parties to either modify the note or deed of trust or for Defendant to provide any mortgage assistance to Plaintiffs. *Id.* at 11-12. Lastly, Plaintiffs assert that their claim for an accounting is appropriate because they do not have access to the documentation supporting the charges assessed against them. *Id.* at 14-15.

C.  **Applicable Law and Analysis**

   *1. Negligent Undertaking*

To state a claim for negligent undertaking, Plaintiffs must demonstrate that Defendant: (1) undertook to perform services that it knew or should have known were necessary for Plaintiffs' protection; (2) failed to exercise reasonable care in performing those services; and (3) performed the services in a manner that increased Plaintiffs' risk of harm. *Torrington v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2001). Moreover, contrary to Plaintiffs' arguments, they must allege that some physical harm resulted from Defendant's rendition of services. *Id.* (stating that one who undertakes to render services to another, which are necessary for the protection of the other's person or things, is subject to liability for *physical harm* resulting from his negligence) (emphasis added) (quoting Restatement (Second) of Torts § 323 (1965)); *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119-20 (Tex. 1976) (stating that one "who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby").[2]

Plaintiffs assert that the loss in *Colonial* was purely pecuniary in nature, (Doc. 14 at 7), but the Court views the claimant's house burning down as a physical harm to the claimant's real property. *See Bernard Johnson, Inc. v. Cont. Const., Inc.*, 630 S.W.2d 365, 375 n.10 (Tex. App. 3d Dist. 1982) (noting that the destruction of the house by fire in the *Colonial* case was "clearly a case of physical harm to the plaintiff's 'thing.'"). Plaintiffs' related contention that they need not

---

[2] While Plaintiffs argue that the Texas Supreme Court has never adopted the "physical harm" limitation in section 323 of the Restatement, the Court of Appeals for the Fifth Circuit found that both the *Colonial* and *Torrington* panels adopted section 323. *Wentwood Woodside I, LP v. GMAC Comm. Mortg. Corp.*, 419 F.3d 310, 319 (5th Cir. 2005).

show any increased risk of harm to recover under a negligent undertaking theory misses the broader point that they must show damages to recover for any tort, and under Texas case law, the damage for this tort must be physical harm to either a person or property. In the two cases Plaintiffs rely on, *Torrington* and *Colonial*, there was no question that the harm was physical in nature. In *Torrington*, two people died in a helicopter crash, and, as previously mentioned, in *Colonial*, the plaintiffs' house burned down. Given the drastic nature of the harm in those cases, it is not surprising that the court did not discuss the necessity of showing physical harm to recover under a negligent undertaking theory. In sum, because Plaintiffs' petition fails to allege any facts showing that they or their property suffered any physical harm, as opposed to pecuniary damages, their negligent undertaking claim fails.[3] (Doc. 14 at 10-11). Because Plaintiffs' claim cannot succeed for that reason, Defendant's other arguments in support of dismissal are not addressed.

　　2. *Equitable Accounting*

"A suit for an accounting is generally founded in equity." *Sw. Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex.App.–San Antonio 1994) (citing *Palmetto Lumber Co. v. Gibbs*, 80 S.W.2d 742, 748 (Tex. 1935)). To be entitled to an accounting, a plaintiff usually must have a contractual or fiduciary relationship with the party from which the accounting is sought. *See Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 642 (Tex. App.–Tyler 1983) (holding that a mineral interest grantee was not entitled to an accounting from an oil company where there was

---

[3] Although the decision is unpublished and thus not precedential, the Court of Appeals for the Fifth Circuit recently upheld a district court's dismissal of a negligent undertaking claim in the foreclosure context because the plaintiffs alleged no physical harm. *James v. Wells Fargo Bank, N.A.*, 533 Fed. Appx. 444, 448 (5th Cir. 2013) (citing *Torrington*).

10

no contractual or fiduciary relationship between the parties). Further, an "equitable accounting is proper when the facts and accounts presented are so complex adequate relief may not be obtained at law." *Hutchings v. Chevron U.S.A., Inc.*, 862 S.W.2d 752, 762 (Tex. App.– El Paso 1993) (citing *Richardson v. First Nat'l Life Ins. Co.*, 419 S.W.2d 836, 838 (Tex. 1967)). When a party can obtain adequate legal relief through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting. *See Hutchings*, 862 S.W.2d at 762.

Plaintiffs' assertion that they are entitled to an accounting cannot succeed because they have not alleged that they are unable to attain pertinent information through ordinary discovery procedures. Additionally, there is no support for concluding that the facts and accounts at issue here are particularly complex. *Id.* Further, Plaintiffs state that they do not have a contractual relationship with Defendant, which is the servicer of the loan, and no global fiduciary relationship exists under the law that would establish Plaintiffs' entitlement to an accounting. (Doc. 14 at 12-13); *id.*; *see Hinton v. Fed. Nat. Mortg. Ass'n*, 945 F.Supp. 1052, 1060 (S.D. Tex. 1996), *aff'd* 137 F.3d 1350 (5th Cir. 1998) (holding that the servicing agent for a home loan had only the limited fiduciary duty to receive the borrower's escrow payments, retain them, and apply them in accordance with the deed documents and its servicing agreement). Accordingly, Defendant's motion to dismiss Plaintiffs' accounting claim should be **GRANTED**.

   3. *Leave to Amend*

If the Court grants Defendant's dismissal motion, Plaintiffs request leave to re-plead their complaint under Federal Rule of Civil Procedure 15(a). (Doc. 14 at 15). Defendant has not noted any opposition to that request and, in fact, alternatively pled for such in its dismissal

motion. (Doc. 7 at 5). The time for Plaintiffs to amend their complaint as of right has expired. FED. R. CIV. P. 15(a)(1) (setting a 21-day limit for moving to amend following service of a motion to dismiss). Nevertheless, Rule 15(a)(2) allows a party to amend its pleadings with leave of court, and "[t]he court should freely give leave when justice so requires." A district court has broad discretion in deciding whether to grant leave to amend, and the Fifth Circuit has long recognized that Rule 15(a) evinces a liberal amendment policy. *See Lowery v. Texas A & M University System*, 117 F.3d 242, 245 (5th Cir. 1997). Thus, leave to amend should be granted almost as a matter of course unless there is: (1) undue delay, bad faith, or dilatory motive on the part of the movant; (2) repeated failure to cure deficiencies by amendments previously allowed; (3) undue prejudice to the opposing party; or (4) the proposed amendment is futile. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

In this case, there is no evidence of any negative intent or failure on Plaintiffs' part and Defendant will not be prejudiced by an amendment at this early stage of the case. Additionally, it is not clear what claims Plaintiffs will raise in an amended complaint as they state that they may raise "alternate and viable causes of action." (Doc. 14 at 15). As such, the Court cannot evaluate the futility, *vel non*, of any amendment. Accordingly, leave to amend should be **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, it is recommended that Defendant's *Motion to Dismiss* (Doc. 7) be **GRANTED**, Plaintiffs' *Motion to Remand* (Doc. 12) be **DENIED**, and Plaintiff's *Alternative Motion for Leave to File an Amended Complaint* (Doc. 14) be **GRANTED**. However, Plaintiffs should be given 14 days from the date of this Recommendation to amend their complaint. If Plaintiffs do not file an amended complaint that sufficiently states a claim for

relief within the 14 days allotted for objections to this Recommendation, this case should be

**DISMISSED WITH PREJUDICE**.

      **SO RECOMMENDED** on January 27, 2014.

                            RENÉE HARRIS TOLIVER
                            UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                            RENÉE HARRIS TOLIVER
                            UNITED STATES MAGISTRATE JUDGE